UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LESTER NELSON LUTZ** | : | CIVIL NO. 1:09-CV-1510 |
| | : | |
| Petitioner, | : | (Judge McClure) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| **DAVID A. VARANO et al.,** | : | |
| | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

I.  **Statement of Facts and of the Case**

   A.  **Introduction**

Sixteen years ago, in 1993, Lester Nelson Lutz, was charged with multiple counts of rape, indecent assault, and deviate sexual intercourse. (Doc. 1,¶¶ 1-7.) Thirteen years ago, on March 10, 1995, Lutz pleaded guilty to two counts of deviate sexual intercourse and was sentenced to two consecutive five-to-ten year sentences. (Id. ¶ 3.)

Lutz never appealed this conviction and sentence, which occurred more than a decade ago. (Id. ¶8.) Indeed, beyond Lutz's completely undocumented assertion that he filed a state petition challenging this conviction late in 1995, there is no record that Lutz took any action with respect to this conviction for more than eight years, until December 2003 when he filed a state post conviction relief act petition. (Id. ¶ 11.) When that petition was denied by the trial court in February 2004, and Lutz's state

appeal was rejected by the Pennsylvania Supreme Court in April of 2004,(id.) Lutz again took no action for thirteen months, until he filed another, tardy petition in state court in May, 2005. (Doc. 14 App. 1-3.) According to Lutz's current federal habeas petition, he then engaged in some form of state litigation of this belated petition until November, 2008, when the Pennsylvania Supreme Court denied his last state application for relief. (Id. Ground 1, ¶6.) Following this adverse ruling, another nine months elapsed before Lutz filed this federal habeas petition in August 2009. (Id.)

Now-sixteen years after these offenses occurred, thirteen years after his guilty plea conviction, five years after his first documented attempt to launch a state collateral attack upon this conviction, and 4 years after that collateral attack was denied because of Lutz's failure to timely litigate his claims-Lutz comes to federal court seeking a writ of habeas corpus overturning this state conviction.

For the reasons set forth below, it is recommended that this petition for writ of habeas corpus be denied as untimely.

### B. Procedural History of the State Prosecution

This is a case with a lengthy, tortured, and sometimes mysterious litigation history. The story of Lester Lutz's case began in 1993, when Lutz was charged with multiple counts of rape, indecent assault, and deviate sexual intercourse. (Doc. 1,¶¶ 1-7.) Following his arrest, on March 10, 1995, Lutz pleaded guilty to two counts of

deviate sexual intercourse in the Court of Common Pleas of Lackawanna County. Lutz and then was sentenced to two consecutive five-to-ten year sentences. (Id. ¶ 3.)

It is undisputed that Lutz never took a direct appeal from this March 1995 conviction and sentence. (Id.) What is disputed, albeit unpersuasively, is whether Lutz took any action at any time in 1995 to challenge this conviction and sentence. Court records unequivocally reflect that Lutz did not challenge his conviction in a timely fashion. Indeed, there is no record of any action on Lutz's part in this case for more than seven years, until December 2003.

Lutz, however, claims that sometime in "late 1995" he challenged this conviction by filing a petition for relief under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. C.S.A. §§ 9541 et seq. (Id. ¶11.) Lutz's assertion that he made such a filing is completely unsupported by any evidence, and is contradicted by prior pleadings filed by Lutz in state court. Thus, Lutz provides no copy of his 1995 pleading, and there is no record of any such pleading having ever been filed. Moreover, it is noteworthy that when Lutz filed what appears to have been his first state PCRA petition in 2003, he made no mention of this prior pleading, did not refer to the prior petition in any fashion, and, in fact, denied having filed any prior PCRA petitions.(Doc. 14, App. pp.9-36.)

The first documented effort by Lutz to challenge this state conviction an

sentence came on December 16, 2003, eight-and-one-half years after he was convicted in state court. (Doc. 1, ¶11(b).) According to Lutz, this belated petition was denied by the trial court on February 12, 2004, and a pro se appeal, "filed by an unqualified jail house lawyer" was denied by the Pennsylvania Supreme Court on April 21, 2004. (Id.)

Another period of curious inaction then ensued. There is then no record of any action by Lutz to further pursue this case for the next thirteen months, until May 11, 2005, when Lutz filed a *nunc pro tunc* motion in the Court of Common Pleas of Lackawanna County to withdraw the guilty pleas he had entered some ten years earlier. (Doc. 14, App. pp.1-2.) This motion was treated as a second PCRA petition and denied, inspiring what Lutz describes in his federal petition as state appellate court litigation which appears to have continued sporadically in various forms until November 18, 2008, when Lutz reports that the Pennsylvania Supreme Court denied his last state application for relief. (Id. Ground 1, ¶6.)

### C. Lutz's Federal Habeas Petition

Lutz then took no further action whatsoever in this case for more than nine months, until August 7, 2009, when he filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The Commonwealth has now filed an initial response to this petition which asserts that this petition is barred by the one-year statute of limitations which applies to state habeas actions under 28 U.S.C. § 2244. For

the reasons set forth below, we recommend that Lutz's petition be denied as time-barred.

## II. Discussion

### A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
>> **(A)** the applicant has exhausted the remedies available in the courts of the State;
>> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
>
> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b)

#### (1.) Substantive Standards for Habeas Petitions

As this statutory text implies, state prisoners must meet exacting substantive and

procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

    **(2.)** **Procedural Benchmarks for Habeas Petitions**

        **( a. )** **Statute of Limitations**

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that petitioners timely file motions seeking habeas corpus relief. The

Antiterrorism and Effective Death Penalty Act of 1996("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by state prisoners. In pertinent part, § 224(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> © the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dept. of Corrections 145 F.3d 616, 617 (3d Cir.1998).

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d)(2), which provides that:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz, 204 F.3d at 424. Thus, the courts have construed this tolling provision in a forgiving fashion, and in a manner which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further appellate review of their cases, even if they did not, in fact, elect to seek such review. However, for purposes of tolling the federal habeas statute of limitations, a "properly filed application for State post-conviction or other collateral review" only includes applications which are filed in a timely fashion under state law. Therefore, if the petitioner is delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas

petitions; Miller, 145 F.3d at 617-18, and therefore is subject to equitable tolling. Id. at 618-19.Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the United States Court of Appeals for the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:

> [T]hree circumstances permit[] equitable tolling: if
>
> (1) the defendant has actively misled the plaintiff,
> (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or
> (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.
>
> Jones v. Morton, 195 F.3d 153, 159 (3d Cir.1999) (citations omitted).

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001).

Applying this exacting standard, Courts have held that: "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling. See Freeman v. Page, 208 F.3d 572 (7th Cir.2000) (finding no basis for equitable tolling where the

statute of limitations was changed to shorten the time for filing a PCRA only four months prior to the filing of the petition); Taliani v. Chrans, 189 F.3d 597 (9th Cir.1999) (finding lawyer's inadequate research, which led to miscalculating the deadline, did not warrant equitable tolling)." Id. Courts have also repeatedly rejected claims by *pro se* litigants that the burdens of proceeding *pro se* should somehow exempt them from strict compliance with the statute of limitations. See, e.g., Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001);United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000); Felder v. Johnson, 204 F.3d 168, 171 (5th Cir. 2000). Thus, while tardy habeas petitioners often invite courts to find extraordinary circumstances warranting equitable tolling, those invitations are rarely embraced by the courts. See, e.g., Merritt v. Blaine, 326 F.3d 157 (3d.Cir. 2003)(denying equitable tolling request); Robinson v. Johnson, 313 F.3d 128 (3d. Cir. 2002)(same).

    **B.    Lutz's Petition is Time-Barred by AEDPA's Statute of Limitations**

In this case, the Commonwealth argues as a threshold matter that Lutz's petition is now barred by § 2244(d)'s one-year statute of limitations. Our analysis of the delays which have plagued this litigation over the past thirteen years convinces us that these claims are, in fact, now time-barred.

The history of this case reveals that Lutz was convicted in March of 1995, but pursued no direct appeal of his conviction and sentence. Indeed, Lutz took no credible,

documented steps to challenge this conviction for the next eight-and-one-half years, until December 2003. Thus, on the face of the state court records, Lutz's petition is clearly untimely, and is barred by the statute of limitations.

In an effort to avoid this result, Lutz argues without any evidentiary support that he filed a PCRA petition sometime in "late 1995". When the Commonwealth noted that there was absolutely no record of this petition, Lutz's pleadings then took an Orwellian turn, with Lutz speculating that the state must have destroyed all record of the existence of this prior case, as part of some massive, clandestine conspiracy. Yet, the evidence suggests a much simpler course of events, a course of events documented by Lutz in his own words.

Simply put, Lutz's assertion that he made such a filing in 1995 is incredible, is completely unsupported by any evidence, and is actually contradicted by prior pleadings filed by Lutz in state court. For example, this claim is directly contradicted by the statements made by Lutz in what appears to have been his first state PCRA petition filed in 2003. In this 2003 PCRA petition, Lutz made no mention of any prior petitions, did not refer to the prior petition in any fashion, and, in fact, denied having filed any prior PCRA petitions. (Doc. 14, App. pp. 9-36.) These 2003 statements by Lutz give the lie to his current, belated claim that he filed a timely PCRA petition in "late 1995".

But even if we fully credited this implausible assertion, a straightforward application of the statute of limitations to Lutz's newest litigation chronology still leads to a finding that this case is time-barred. If we accept that Lutz filed a PCRA petition in "late 1995", then conservatively six months elapsed between his March 19, 2005 conviction and his PCRA filing. If we then gave the petitioner every benefit of the doubt, and tolled the entire time period from late 1995 through the litigation of Lutz's 2003 PCRA petition, we would toll approximately nine years, from March 1995 through the denial of Lutz's appeal of the PCRA petition by the Pennsylvania Supreme Court on April 21, 2004. From this benchmark date, an additional five years and three months passed before Lutz filed his federal habeas petition in August 2009, making the total elapsed time between Lutz's post-conviction state litigation and his federal petition that is not subject to any legitimate claim of tolling five years and nine months, a period which is still far in excess of the one-year limitations period prescribed by § 2244.

Lutz cannot save this untimely petition by citing to the fact that he filed another PCRA petition in May of 2005. That petition, which was filed more than a year after the conclusion of the litigation of his first PCRA claim, was clearly untimely under state law, and as an untimely petition that tardy pleading will not be considered a "properly filed application for State post-conviction or other collateral review" which

may toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

But even if we wished to toll the entire time period from May 2005 through November 2008 when this second state petition was pending in various forms in the state courts, Lutz's federal petition would still be untimely since more than two years which are not tolled in any fashion would have elapsed between Lutz's March 1995 state conviction and the filing of his August 2009 federal habeas corpus petition. These lapsed periods would consist of: (1) at least six months in 1995 between Lutz's March 1995 conviction and the filing of his claimed, but completely unproven, PCRA petition in "late 1995"; (2) an additional 12 months between the first Pennsylvania Supreme Court ruling in April 2004 rejecting Lutz's 2003 PCRA petition, and his May 2005 second PCRA petition filing; and (3) an additional nine months between the November 2008 denial of Lutz's second PCRA petition, and the filing of his federal habeas petition in August 2009.

Thus, no form of statutory tolling analysis can save Lutz's petition from the fate which AEDPA's one-year statute of limitations dictates for any habeas petition brought thirteen years after the petitioner's conviction. On its face, this petition is untimely and falls outside § 2244(d)'s one-year limitation period.

Nor can we find any extraordinary circumstances of the type which would

justify equitable tolling of this limitations period. In this regard, it is incumbent upon Lutz to demonstrate that: "the petitioner has '**in some extraordinary way** ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." <u>Miller,</u> 145 F.3d at 618-19 (citations omitted)(emphasis added).

Lutz cannot meet this burden of proving extraordinary circumstances justifying tolling of this limitations period. Quite the contrary, in this case several factors weigh heavily against equitable tolling of the limitations period for Lutz. At the outset, equitable tolling would be particularly inappropriate here, given the nature of the claims that Lutz seeks to advance in a tardy fashion. Liberally construed, Lutz's petition advances two types of claims, coupling completely fanciful assertions that his state court records have been wholly fabricated with wholly obvious claims that his counsel failed to take specific actions on his behalf, matters which would have been apparent to Lutz thirteen years ago. Where a petitioner's decade-old claims combine in equal measure the frivolous with what should have been obvious, it simply cannot be said "that [t]he [petitioner] . . . 'exercised reasonable diligence in investigating and bringing [the] claims'" when he delayed a decade or more before asserting these claims. <u>Miller,</u> 145 F.3d at 618-19 (citations omitted). Rather, the history of this

litigation affirmatively reveals that Lutz has been dilatory in pursuing this matter, by delaying years before filing this federal petition, and by failing to timely pursue his claims in the state courts.

Yet, while Lutz has made no showing of extraordinary circumstances on his part which would justify tolling this limitations period, there are substantial interests that weigh in favor of holding Lutz strictly to the limitations period prescribed by law. These countervailing interests include the strong societal interests favoring finality in litigation, as well as the institutional interests of the criminal justice system, which favor prompt presentation and resolution of disputes. However, when considering a statute of limitations question in the context of a belated collateral attack upon a criminal conviction arising out of the sexual exploitation of others, there is also an important human dimension to the statute of limitations. In 1993, Lutz was charged with multiple crimes of sexual exploitation. In 1995 he pleaded guilty to those crimes. To ignore the limitations period prescribed by law, and permit Lutz to belatedly re-open this case, would compel the victims to, once again, experience the trauma of those events. Since Lutz has not fulfilled his responsibility to bring this petition in a timely manner, and has not carried his burden of showing extraordinary circumstances justifying a tolling of the statute of limitations, he should not be entitled to compel the government to require his victims to revisit these events.

In short, Lutz's petition invites this court to ignore his procedural defaults, discount the statute of limitations, and re-open a thirteen year old case, without considering the potential harm which could be experienced by the victim if she was required to endure these events once again. Since Lutz's request flies in the face of the law, and cannot be justified on the facts, this court should decline this invitation, and deny his petition for writ of habeas corpus. See, e.g., Merritt v. Blaine, 326 F.3d 157 (3d.Cir. 2003)(denying equitable tolling request); Robinson v. Johnson, 313 F.3d 128 (3d. Cir. 2002)(same).

### III. Recommendation

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue. The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of

those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of March, 2010.

       *S/Martin C. Carlson*
       **United States Magistrate Judge**